Filed 8/28/23  P. v. Grissom CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN LEWIS GRISSOM,<br><br>    Defendant and Appellant. | B303540<br><br>(Los Angeles County<br>Super. Ct. No. YA026000) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal; John Lewis Grissom, in pro. per., for Defendant and Appellant.

Rob Bonta, Attorney General, Noah P. Hill, Supervising Deputy Attorney General, for Plaintiff and Respondent.

————————————

John Lewis Grissom, convicted in 1996 of first degree murder and attempted willful, deliberate and premeditated murder, appeals the denial of his petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95).[1] We originally dismissed the appeal after Grissom's appointed counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 stating he was unable to identify any arguable issues and Grissom failed to timely file a supplemental letter or brief identifying any issues he wanted the court to consider. We subsequently deemed Grissom's late-filed supplemental brief a petition for rehearing and denied the petition.

After granting Grissom's petition for review, on June 28, 2023 the Supreme Court transferred the case to this court with directions to vacate our prior decision and to consider whether to exercise our discretion to conduct an independent review of the record or provide any other relief in light of its decision in *People v. Delgadillo* (2022) 14 Cal.5th 216. We have done so and now affirm the order denying Grissom's petition for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Grissom's Trial and Convictions for Murder and Attempted Murder*

Grissom was charged by information filed in December 1995 with the first degree murder of Darryl Thomas Johnson (§ 187, subd. (a)); the attempted deliberate, willful and premeditated murder of Shavon Robinson (§§ 187, subd. (a), 664, subd. (a)); carjacking (§ 215, subd. (a)); and second degree robbery (§ 211). The information also alleged Grissom had personally

---

[1]    Statutory references are to the Penal Code.

2

used a firearm in the commission of the offenses (§ 12202.5, subd. (a)).

The evidence at trial established that members of the Underground Crips, Grissom's criminal street gang, stole Carl Simmons's black Honda Civic at gunpoint shortly before midnight on April 2, 1995 and then used the car approximately 30 minutes later in a drive-by shooting in the territory of the Hoover Crips, a rival gang. Johnson and Robinson, both members of Hoover Crips, were sitting and talking in Johnson's car when the shooting occurred. Johnson was killed by one of the shots; Robinson fled the car without being hit. The incident was apparently in retaliation for the recent beating of Grissom's brother by Hoover Crips gang members.

The prosecutor presented evidence that Grissom was with the group that stole Simmons's car, which Grissom then drove to the apartment complex where Tajuan Randall, another member of the Underground Crips, lived. Grissom called to Randall, who came out and spoke to Grissom. The two men then drove away in separate cars—Grissom in the stolen Civic, and Randall following him in a white Oldsmobile. One shot was fired from the Civic as it drove by Johnson's car. The Civic then backed up and stopped next to Johnson's car, at which point a second shot was fired. Grissom and Randall then drove back to Randall's apartment where Grissom hid the rifle used in the attack. Two rifle ammunition casings were later found in the Civic.[2]

---

[2] The People's witnesses at trial included Robinson, who testified about the shooting from a black vehicle that had pulled alongside the car in which she and Johnson were sitting; and Bonnitta Harris, Randall's live-in girlfriend, who testified that Grissom came to their apartment complex in a black Honda and

3

In a statement to police following his arrest, Grissom, after initially denying he had been with Randall on April 2, 1995, admitted he was present during the carjacking and the murder of Johnson but denied participating in either offense. He claimed Randall had shot at Johnson from the Civic's passenger seat. Grissom's testimony at trial was essentially the same. He again admitted he was present during the carjacking and murder and insisted he did not participate in either crime. Grissom said he was in the car that followed the Civic and was four car lengths behind it when Randall shot at Johnson's car from the passenger seat of the Civic.

The trial court instructed the jury, in part, with CALJIC No. 3.01 on direct aiding and abetting: "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting." The People did not argue, and the court did not instruct the jury, that Grissom could be found guilty of murder under the felony-

---

spoke to Randall, the two men left with Grissom in the Honda and Randall driving a white Oldsmobile, and, when they returned, Grissom was carrying a rifle and said "he got them niggers for beating up his mama." The People also called several sheriff's deputies involved in the investigation of the crimes and a gang expert.

4

murder rule or guilty of murder or attempted premediated murder under the natural and probable consequences doctrine.

The jury found Grissom guilty of first degree murder, attempted willful, deliberate and premeditated murder, carjacking and second degree robbery. It also found true the firearm-use enhancement for carjacking and robbery but not for murder and attempted murder. The court, after dismissing the robbery count as included within carjacking, sentenced Grissom to an aggregate indeterminate state prison term of 31 years to life. We affirmed Grissom's convictions on appeal. (*People v. Grissom* (Aug. 19, 1997, B104406) [nonpub. opn.].)

2. *Grissom's Petition for Resentencing*

On March 11, 2019 Grissom, representing himself, filed a document he titled, "Motion To Calendar Penal Code § 1170(d)(1) Hearing To Consider CDCR's Notation of Disparity In Sentencing With § 1170.95 Consideration re Declaration of Petitioner." The motion stated, in part, it was "made on the Declaration of Defendant indicating qualification and prima facie basis to find good cause to § 1170.95 sentencing consideration."[3]

---

[3]    The August 28, 2018 letter from the California Department of Corrections and Rehabilitation attached to Grissom's motion stated the minute order and abstract of judgment reflected that the superior court had imposed a three-year term for the section 12022.5, subdivision (a), firearm enhancement on the carjacking count, but the triad for that enhancement was actually four, five or 10 years. The letter then stated, "Please review your file to determine if a correction is required. When notified by the Department of Corrections and Rehabilitation that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices."

The superior court deemed Grissom's motion a petition for resentencing pursuant to former section 1170.95 and appointed counsel to represent him in the proceedings. Extensive briefing ensued. The People filed two oppositions, one contending section 1170.95 was unconstitutional; a second one arguing Grissom remained guilty of murder under amended sections 188 and 189. Grissom's appointed counsel filed a reply to the People's constitutional argument. The People then filed a supplemental opposition addressing the factual and nonconstitutional legal issues presented by Grissom's petition, and Grissom's counsel followed with a reply that included as exhibits the reporter's transcript and jury instructions from Grissom's trial.

The superior court denied the petition on December 24, 2019 without issuing an order to show cause, finding Grissom ineligible for relief as a matter of law because the record of conviction (the instructions and jury verdict) clearly established he had been convicted of murder and attempted murder as a direct aider and abettor.

Grissom appealed the denial of his petition.[4] We appointed counsel to represent Grissom in this appeal. On May 20, 2020 Grissom's appellate counsel notified this court that, after

_____

[4]     The notice of appeal filed on Grissom's behalf by counsel appointed to represent him in the superior court misidentified the order being appealed as dated December 6, 2019, rather than December 24, 2019. (See generally *In re Joshua S.* (2007) 41 Cal.4th 261, 272 ["'[i]t is, and has been, the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced'"]; Cal. Rules of Court, rule 8.100(a)(2) ["notice of appeal must be liberally construed"].)

examination of the record, he was unable to identify any arguable issue and asked us to independently review the record on appeal under *People v. Wende, supra*, 25 Cal.3d 436. Appellate counsel also advised Grissom he could submit a letter or brief to this court within 30 days raising any contentions or arguments he wanted us to consider.

On May 20, 2020 we also notified Grissom through his counsel that he could submit a supplemental letter or brief within 30 days. That notice did not state the appeal would be dismissed if no letter or brief was filed. We thereafter granted Grissom's request to extend his time to file a supplemental brief to August 10, 2020. Having received no response by August 19, 2020, we dismissed the appeal.

On August 25, 2020 Grissom filed his supplemental brief. Because we had already dismissed the appeal, we deemed the document a petition for rehearing and denied the petition.

3. *The Supreme Court's Direction To Reconsider Grissom's Appeal*

Grissom filed a petition for review in the Supreme Court (S264576), which was granted and initially held pending the Court's decision in *People v. Lewis* (2021) 11 Cal.5th 952. The Court later granted Grissom's motion to expand review to including the issues pending in *People v. Delgadillo, supra*, 14 Cal.5th 216; further action was deferred pending the decision in that case. On June 28, 2023 the Supreme Court transferred Grissom's case to us with directions to vacate our decision and to reconsider whether to exercise our discretion to conduct an independent review of the record or provide any other relief in light of *Delgadillo*.

7

Pursuant to California Rules of Court, rule 8.200(b), Grissom's appointed counsel filed a supplemental brief after transfer requesting that we exercise our discretion to conduct an independent review of the record and otherwise follow the procedures outlined in *People v. Delgadillo*, *supra*, 14 Cal.5th 216. In their supplemental brief after transfer the People acknowledged our notice to Grissom did not comply with the requirements articulated in *Delgadillo* but contended the error was harmless because we had considered the late-filed supplemental brief as a petition for rehearing. Alternatively, the People suggested we could send a new notice to Grissom that expressly advised him his appeal would be dismissed if he failed to file a supplemental letter brief and also independently review the record.

## DISCUSSION

### 1. *Section 1172.6 Petitions for Resentencing*

Under the ameliorative changes to the law relating to accomplice liability for murder effected by Senate Bill No. 1437 (Stats. 2018, ch. 1015), malice must be proved to convict a principal of murder except under the narrowed felony-murder rule set forth in revised section 189, subdivision (e), and may not be imputed based solely on an individual's participation in a crime (§ 188, subd. (a)(3)), thereby eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843; see *People v. Reyes* (2023) 14 Cal.5th 981, 984). As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), effective January 1, 2022, Senate Bill No. 1437's changes to the law of murder expressly apply to individuals convicted of attempted murder and voluntary manslaughter.

8

Section 1172.6 authorizes an individual convicted of murder under the felony-murder rule or murder or attempted murder based on the natural and probable consequences doctrine or any other theory under which malice is imputed based solely on that person's participation in a crime to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder or attempted murder under revised sections 188 and 189. The superior court may not engage in judicial factfinding or make credibility decisions before issuing an order to show cause pursuant to section 1172.6, subdivision (c), and conducting an evidentiary hearing pursuant to section 1172.6, subdivision (d), to determine whether the People have proved the petitioner is guilty of murder or attempted murder under current law. (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) However, when first evaluating whether the petitioner has carried the burden of making a prima facie showing of entitlement to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971; accord, *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.) "[I]f the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Lewis*, at p. 971, internal quotation marks omitted.)

2. People v. Delgadillo

In *People v. Delgadillo, supra*, 14 Cal.5th 216 the Supreme Court determined the procedures appointed counsel and the courts of appeal must follow when counsel determines an appeal from an order denying postconviction relief under section 1172.6 lacks arguable merit. The court of appeal in *Delgadillo* had notified the appellant/petitioner that he could file a supplemental brief or letter after his counsel filed a no-arguable-issue brief but did not advise him the appeal would be dismissed as abandoned if no supplemental brief or letter was filed. In addition, although the court's notice indicated the *Wende* independent review procedures would be applied, the court dismissed Delgadillo's appeal as abandoned when he did not file a supplemental letter and did so without conducting an independent review of the record on appeal. (*Delgadillo*, at pp. 222, 224.)

The Supreme Court, explaining there was no constitutional right to counsel in a postconviction appeal, held the procedures for independent review set out in *People v. Wende, supra*, 25 Cal.3d 436 did not apply when the petitioner's appointed counsel filed a notice that the appeal from the denial of a petition for resentencing under section 1172.6 lacked arguable merit. (*People v. Delgadillo, supra*, 14 Cal.5th at pp. 222, 231.) However, the Supreme Court also held, when appointed counsel files a no-issue brief, the court of appeal must provide notice to the petitioner concerning his or her right to file a supplemental letter or brief within 30 days and that notice must advise the petitioner the appeal will be dismissed as abandoned if no supplemental brief or letter is filed. (*Id*. at pp. 222, 231.) If the petitioner files a supplemental brief, the Supreme Court continued, "the Court of Appeal is required to evaluate the

10

specific arguments presented in that brief and to issue a written opinion.  The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Id.* at p. 232.)  Finally, the Supreme Court noted, "[w]hile it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Ibid.*)

> 3. *Grissom's Appeal Lacks Any Colorable Merit*

The notice sent to Grissom, like the notice in *Delgadillo*, failed to advise him his appeal would be dismissed if he failed to submit a supplemental letter or brief.  However, no new notice is necessary in this case.  Because we have vacated our prior decision, we may now consider the specific issues raised in Grissom's late-filed 47-page supplemental brief, as required by the *Delgadillo* procedures.  In addition, as requested by Grissom's appointed counsel and suggested by the People, we exercise our discretion to independently review the record.

Grissom's supplemental brief raised three issues.  First, in describing the procedural background of the case in its ruling denying Grissom's petition, the superior court stated, "As to the attempted murder, carjacking, and robbery convictions, the jury found petitioner personally used a rifle."  Grissom argued this statement demonstrated he was denied his due process right to an impartial judge because the jury did not find true the firearm enhancement allegation on the attempted murder count.[5]  The

---

[5]    Grissom also complains, incorrectly, that the superior court erred in stating the jury had convicted him of robbery.  Although the trial court dismissed the robbery charge before sentencing, the jury found Grissom guilty of that crime.

11

court's misstatement, however, played no part in its determination that the record of conviction established Grissom's ineligibility for resentencing relief as a matter of law. As discussed, that finding was based on the instructions relating to murder and attempted murder, the absence of any instructions involving imputed malice, and the jury's guilty verdicts on the substantive offenses, not its findings on the enhancement allegations.

Second, emphasizing that his March 11, 2019 motion included a request for a hearing under former section 1170, subdivision (d)(1), based on the August 28, 2018 letter to the court from the California Department of Corrections and Rehabilitation (CDCR) concerning a possible sentencing discrepancy, Grissom argued the court's failure to schedule a hearing on that portion of his motion deprived him of his right to a judicial determination of his claims. The CDCR letter, however, was not a recommendation that Grissom be resentenced, as authorized by former section 1170, subdivision (d)(1), but notice that the trial court may have incorrectly imposed a three-year term for the firearm enhancement on the carjacking count, rather than a minimum four-year term.[6] Moreover, in his supplemental letter brief Grissom, who was 19 years old at the time of Johnson's murder, explained

---

[6] In 2019 when the superior court deemed Grissom's motion to be a petition for resentencing under former section 1170.95, whether to conduct a hearing pursuant to former section 1170, subdivision (d)(1), following receipt of a resentencing recommendation from the CDCR was within the court's broad discretion. (See *People v. McCallum* (2020) 55 Cal.App.5th 202, 215-216.) As subsequently amended and renumbered as section 1172.1, subdivision (a), a CDCR recommendation may not be denied without a hearing. (§ 1172.1, subd. (a)(8).)

he was seeking an opportunity to exercise his rights under *People v. Franklin* (2016) 63 Cal.4th 261 and *In re Cook* (2019) 7 Cal.5th 439 to supplement the record in his case with information relevant to an eventual youth offender parole hearing.  The correct procedural vehicle for an inmate to request a postjudgment evidence preservation proceeding, as the Supreme Court held in *In re Cook*, is a motion pursuant to section 1203.01, subdivision (a) (see *In re Cook*, at pp 451-454), not a petition or motion for resentencing.  Nothing in the record before us precludes Grissom from filing a proper section 1203.01 motion in superior court.

Third, liberally interpreting the final argument in his supplement letter brief, Grissom contended the record of conviction did not establish he was ineligible for resentencing relief as a matter of law because the trial court's instructions on express and implied malice pursuant to CALJIC No. 8.11 ("'Malice Aforethought'—Defined") explained, "Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."  Thus, Grissom argued, the jury may have convicted him of murder and attempted murder based on the now-invalid natural and probable consequences doctrine.[7]

---

[7]     Grissom also argued the trial court erred in failing to instruct, pursuant to CALJIC No. 3.18, that the jury should view an accomplice's testimony with caution, seemingly suggesting, without explanation or record citation, that Randall's girlfriend, who testified during the People's case-in-chief, was an accomplice.  Nothing in our review of the record supports that contention.

As has been repeatedly held, section 1172.6 addresses theories of imputed malice, not implied malice; and aiding and abetting implied malice murder remains a valid theory of murder liability. (*People v. Reyes*, *supra*, 15 Cal.5th at p. 990; *People v. Gentile*, *supra*, 10 Cal.5th at p. 850; *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1263 ["[d]irect aiding and abetting an implied malice murder remains a valid theory after the amendments of Senate Bills 1437 and 775"]; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 390-391 [same].) "[I]mplied malice is defined, in part, in terms of an act, the natural consequences of which are dangerous to life. But while the words 'natural' and 'consequences' overlap, the rest of the two formulations are completely different. '[T]he use of the term "natural consequences" in the . . . definition of implied malice does not import into the crime of murder the case law relating to the distinct "natural and probable consequences" doctrine developed in the context of aiding and abetting liability.' [Citation.] [¶] . . . 'Though [Senate Bill No. 1437] abolished the natural and probable consequences doctrine, it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged.'" (*People v. Carr* (2023) 90 Cal.App.5th 136, 144.)

In any event, the trial court instructed the jury on the count charging Grissom with the attempted willful, deliberate and premeditated murder of Robinson with CALJIC Nos. 8.66 and 8.67, which required the jury to find that the individual shooting at Robinson acted with express malice—"a specific intent to kill unlawfully another human being"—and with "a clear, deliberate intent to kill." For the jury to convict Grissom as an aider and abettor of the attempted premeditated murder of

14

Robinson, therefore, pursuant to CALJIC No. 3.01 it had to find Grissom aided the shooter with knowledge that the shooter, when firing at the car in which Johnson and Robinson were sitting, expressly intended to kill and that Grissom acted with his own intent to facilitate the commission of a murder—that is, that Grissom acted with express malice.

In addition to reviewing the issues raised by Grissom in his supplemental brief, we have exercised our discretion and independently reviewed the record and, like Grissom's appointed counsel, have identified no cognizable legal issues. Accordingly, the order denying Grissom's petition for resentencing is affirmed. (See *People v. Delgadillo*, *supra*, 14 Cal.5th at pp. 231-232; see also *People v. Serrano* (2012) 211 Cal.App.4th 496, 503; see generally *People v. Kelly* (2006) 40 Cal.4th 106, 118-119; *People v. Wende, supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The postjudgment order is affirmed.


PERLUSS, P. J.

We concur:



SEGAL, J.



FEUER, J.

15